IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DARJA O.,<br><br>                Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of<br>Social Security,<br><br>                Defendant. | MEMORANDUM DECISION AND<br>ORDER<br><br><br>Case No. 4:25-cv-00110-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Darja O.'s appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental security income.[1] The Court reverses the administrative ruling and remands for further proceedings.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If

---

[1] Docket No. 21, filed February 20, 2026.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.    PROCEDURAL HISTORY

On April 19, 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on July 1, 2009.[8] The alleged onset date was later amended to April 3, 2019.[9] The claims were denied initially and on reconsideration.[10] Plaintiff then requested a hearing before an ALJ,[11] which was held on September 16, 2021.[12] On December 21, 2021, the ALJ found that Plaintiff was not disabled.[13] The Appeals Council denied review on September 8, 2022.[14]

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 326–40.

[9] *Id.* at 2444.

[10] *Id.* at 197–204, 207–12.

[11] *Id.* at 213–14.

[12] *Id.* at 49–55. Additional hearings were held on December 8, 2020, and April 21, 2021. *Id.* at 56–93.

[13] *Id.* at 20–40.

[14] *Id.* at 1–6.

Plaintiff sought review in this Court and the agency voluntarily remanded the case.[15] Remand hearings were held on April 9, 2024, and May 5, 2025.[16] The ALJ again issued an unfavorable decision on June 6, 2025.[17] The Appeals Council denied review on August 14, 2025,[18] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[19]

On September 19, 2025, Plaintiff filed her Complaint in this case.[20] On September 24, 2025, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[21] The Commissioner filed an Answer and the Administrative Record on November 26, 2025.[22]

Plaintiff filed her Opening Brief on February 2, 2026.[23] The Commissioner's Answer Brief was filed on April 23, 2026.[24] Plaintiff filed her Reply Brief on May 22, 2026.[25]

---

[15] *Id.* at 2566–68.

[16] *Id.* at 2470–2528.

[17] *Id.* at 2441–69.

[18] *Id.* at 2427–29.

[19] 20 C.F.R. §§ 416.1481, 422.210(a).

[20] Docket No. 2.

[21] Docket No. 10.

[22] Docket No. 16.

[23] Docket No. 21.

[24] Docket No. 26.

[25] Docket No. 29.

B.    MEDICAL EVIDENCE

Plaintiff sought disability for epilepsy, bladder ulcers, and arthritis.[26] Plaintiff previously worked as a teacher and teacher's aide but had to stop because of her seizures.[27] She also has a long history of back and abdominal pain.[28] Plaintiff has been treated for attention deficit disorder and described mental difficulties, including an inability to remember and concentrate.[29] She reported losing employment because of her memory issues.[30]

C.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 3, 2019, the amended alleged onset date.[31] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety, attention deficit hyperactivity disorder, seizure disorder, and degenerative disc disease.[32] Relevant here, the ALJ found that Plaintiff's neurocognitive disorder was not a medically determinable impairment.[33] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[34] Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain

---

[26] R. at 402.

[27] *Id.* at 919.

[28] *Id.* at 573, 607.

[29] *Id.* at 447, 452, 715.

[30] *Id.* at 1442.

[31] *Id.* at 2447.

[32] *Id.* at 2447–48.

[33] *Id.* at 2448.

[34] *Id.* at 2448–50.

restrictions.[35] At step four, the ALJ concluded that Plaintiff had no past relevant work.[36] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, she was not disabled.[37]

### III. DISCUSSION

Plaintiff argues that the ALJ erred in his treatment of Plaintiff's neurocognitive disorder at steps two and three and his assessment of Plaintiff's seizure disorder under Listing 11.02. Each will be discussed in turn.

A.      NEUROCOGNITIVE DISORDER

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment[38] and, if so, whether the impairment is severe. A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source."[39]

Here, the ALJ's Step two consideration of Plaintiff's alleged neurocognitive disorder was deficient. The ALJ's entire discussion is as follows:

> The record contains a rule out diagnosis of neurocognitive disorder. Medical interrogatories completed by the medical expert noted that neurocognitive disorder was diagnosed but listed as unconfirmed. The medical expert recommended

---

[35] *Id.* at 2450–56.

[36] *Id.* at 2056.

[37] *Id.* at 2457–58.

[38] 20 C.F.R. §§ 404.1521, 416.921 ("If you are not doing substantial gainful activity, we will then determine whether you have a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). . . . After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.").

[39] 20 C.F.R. §§ 404.1521, 416.921.

Wechsler Adult Intelligence Scale-IV (WAIS-IV) testing, which was subsequently completed and resulted in a rule out diagnosis. A rule out diagnosis is not a diagnosis of a neurocognitive disorder. Therefore, neurocognitive disorder is not medically determinable.[40]

The ALJ did not discuss evidence that supported a finding that Plaintiff's neurocognitive disorder was medically determinable. Specifically, Plaintiff has been diagnosed with a neurocognitive disorder by Christiane Paney, Psy.D., Michelle Miranda, Ph.D., and Amy Bray, Psy.D.[41] These diagnoses were supported objective testing including the Minnesota Multiphasic Personality Inventory ("MMPI") and the Montreal Cognitive Assessment ("MoCA"),[42] but the ALJ failed to discuss them at step two. An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."[43] And while "the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"[44] Here, the prior diagnoses, supported by objective tests, were significantly probative evidence that the ALJ should have discussed in making his step two determination.

---

[40] R. at 2448 (internal citations omitted).

[41] *Id.* at 1440–44, 2377–88, 2943–52, 3108.

[42] *Id.* at 1443 (stating that Plaintiff's score of 21 on the MoCA "is indicative of impaired functioning"); *Id.* at 2379 (stating that Plaintiff's MMPI test results "suggests a Mild Neurocognitive Disorder"); *Id.* at 2947 (discussing score of 19 on the MoCA, which was "indicative of Mild Cognitive Impairment"); *Walker v. Barnhart*, No. 05-4094-JAR-JTR, 2006 WL 3798696, at *2 (D. Kan. Dec. 20, 2006) (finding that "MMPI results are objective evidence"); *Ireland v. Colvin*, No. 14–1012–JWL, 2014 WL 7185008, at *4 (D. Kan. Dec. 16, 2014) (finding that "the Montreal Cognitive Assessment is an objective test"); 20 C.F.R. §§ 404.1529(a), 416.929(a) (defining "objective medical evidence" as "medical signs and laboratory findings").

[43] *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

[44] *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton*, 79 F.3d at 1009–10).

The ALJ's later discussion of these evaluations did not remedy this error. In discussing the medical evidence, the ALJ did briefly discuss these evaluations but did not address their substance.[45] And he made serious errors with respect to each. First, the ALJ failed to include any discussion of Dr. Paney's test results which, as stated, were indicative of impaired functioning.[46]

Next, the ALJ described Dr. Miranda's treatment notes as "an email" that "does not contain any functional limitation."[47] While the final page of Dr. Miranda's notes is an email,[48] the ALJ appears to have ignored the remaining pages, including her evaluation and diagnosis.[49]

Finally, with respect to Dr. Bray's evaluation, the ALJ's analysis runs contrary to the agency's regulations. The regulations provide that "a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is not binding" and, therefore, the ALJ was not required to "provide any analysis in [his] decision about a decision made by any other governmental agency . . . about whether you are disabled."[50] However, the regulations make clear that the ALJ "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim."[51] Thus, the ALJ was not free to ignore Dr. Bray's evaluation simply because it was prepared on behalf of another governmental agency. Moreover, Dr. Bray's evaluation was

---

[45] R. at 2451–52, 2456.

[46] *Id.* at 1443.

[47] *Id.* at 2456.

[48] *Id.* at 2388.

[49] *Id.* at 2377–88.

[50] 20 C.F.R. § 404.1504.

[51] *Id.*

directed at determining whether Plaintiff was competent to proceed in a criminal case, not whether she was disabled. Therefore, the ALJ's treatment of Dr. Bray's evaluation was lacking.

Putting these errors aside and even accepting the ALJ's statement that "[a] rule out diagnosis is not a diagnosis of a neurocognitive disorder,"[52] it does not necessary follow that Plaintiff's "neurocognitive disorder is not medically determinable."[53] Courts have recognized "the fact a diagnosis of an impairment is a 'rule-out' diagnosis does not foreclose the possibility that impairment is medically determinable or even severe."[54] The ALJ's decision to end the discussion at this point requires reversal.

This error was not harmless, as the Commissioner suggests. The initial determination of whether an impairment is medically determinable is an important one because it affects the other steps in the sequential evaluation process. Only those impairments that have been found medically determinable are considered in the later steps.[55] "Unlike an error in determining an impairment's severity at step two, which is not reversible if the ALJ proceeds further to evaluate other impairments, a failure to find an impairment medically determinable is essentially a step-four error because the ALJ is only required to consider medically determinable impairments in

---

[52] R. at 2448.

[53] *Id.*

[54] *Metcalf v. Comm'r of Soc. Sec. Admin.*, 592 F. Supp. 3d 857, 864 & n.4 (D. Ariz. 2022) (collecting cases).

[55] *See Gibbons v. Barnhart*, 85 F. App'x 88, 91 (10th Cir. 2003) (stating that the "ALJ must consider *only* limitations and restrictions attributable to medically determinable impairments") (emphasis added); SSR 98-6p, 1996 WL 374184, at *2 (July 2, 1996) (stating that "in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments").

the RFC at step four, whether severe or not."[56] While "such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC,"[57] it is not clear that the ALJ did so here. Granted, the ALJ imposed limitations based on Plaintiff's mental impairments in determining her RFC, but the Court is unable to assess whether the ALJ sufficiently accounted for Plaintiff's documented neurocognitive disorder.[58] Therefore, reversal is required and the Court need not address Plaintiff's arguments that she meets Listing 12.02, which are better addressed on remand.[59]

B.      LISTING 11.02

Plaintiff also argues the ALJ erred in evaluating her seizure disorder at step three. Relevant here, Listing 11.02 requires proof of either (1) generalized tonic-clonic seizures at least once per month for at least three consecutive months; or (2) generalized tonic-clonic seizures at least once every two months for at least four consecutive months with a marked limitation in physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself.[60] In both categories, the seizures must occur "despite adherence to prescribed treatment."[61]

---

[56] *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (internal citation omitted).

[57] *Id.*

[58] *See Anne S. v. Kijakazi*, No. 2:20-cv-00841-JCB, 2022 WL 204596, at *5 (D. Utah Jan. 24, 2022) ("[T]he court cannot say that the ALJ's error at step two—concluding without explanation that Plaintiff's fibromyalgia was not a medically determinable impairment—did not affect the ALJ's subsequent analysis.").

[59] *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

[60]  20 C.F.R. pt. 404, subpt. P, App. 1, § 11.02.

[61] *Id.*

Here, the ALJ concluded that "[t]he medical evidence in this case does not indicate that [Plaintiff] suffers from generalized tonic-clonic seizures or dyscognitive seizures as described above."[62] This conclusory statement does not provide the Court with an adequate basis to review the ALJ's decision.[63] To the extent the ALJ suggests that Plaintiff's seizures do not meet the frequency or duration requirements, the decision does not provide substantial evidence to support this conclusion. There is some evidence in the record suggesting that Plaintiff did meet the frequency and duration requirements.[64] This evidence is not adequately addressed by the ALJ.

To the extent the ALJ suggests that Plaintiff does not meet Listing 11.02 because she has not adhered to prescribed treatment, further articulation is required. While the ALJ noted that Plaintiff "has not always been compliant with treatment,"[65] he made no finding that this non-compliance factored into the decision that Plaintiff did not meet Listing 11.02. Moreover, the records cited for the proposition that Plaintiff was noncompliant with treatment were based on Plaintiff's failure to follow through with vocational rehabilitation recommendations,[66] not compliance with her seizure medication. The Commissioner's attempt to shore up these

---

[62] R. at 2448.

[63] *Clifton*, 79 F.3d at 1009 ("Such a bare conclusion is beyond meaningful judicial review."); *M. v. Kijakazi*, No. 1:20-cv-00045-DAO, 2021 WL 4133878, at *5 (D. Utah Sept. 10, 2021) (reversing where the ALJ "did not adequately address the medical records showing the[] durational frequency" of plaintiff's seizures, which left "the court unable to effectively review the ALJ's decision under step three of the sequential evaluation").

[64] R. at 2209 (treatment note from January 2021 noting that Plaintiff had been having generalized tonic-clonic seizures four to five times per week since November 2020); *Id.* at 3453 (February 2024 treatment note where Plaintiff reported ten generalized tonic-clonic seizures since August 2023).

[65] *Id.* at 2454.

[66] *Id.* (citing *id.* at 2284–2331).

deficiencies constitutes post-hoc rationalizations the Court cannot consider.[67] Based upon the above, the Court finds that the ALJ's decision is not supported by substantial evidence nor free from legal error.

## C.      REMEDY

Having concluded that the ALJ's decision cannot stand, the question is the remedy. Plaintiff requests an immediate award of benefits. The decision to award benefits is a matter of the Court's discretion.[68] Some of the relevant factors to consider are the length of time the matter has been pending,[69] and whether "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits."[70]

The length this matter has been pending weighs in favor of an immediate award of benefits. However, though a close call, the Court believes that additional fact-finding would be useful given the ALJ's failure to adequately assess Plaintiff's neurocognitive impairment and her seizure disorder. There is conflicting evidence as to the nature and scope on Plaintiff's neurocognitive impairment and how it might affect her ability to engage in full-time work. The ALJ should make this evaluation in the first instance. Similarly, the ALJ must engage in further analysis as to whether Plaintiff meets Listings 12.02 and 11.02.

---

[67] *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (stating the court "may not create or adopt post hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

[68] *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).

[69] *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

[70] *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987).

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court reverses and remands the Commissioner's decision.

DATED this 2nd day of June, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

12